Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7609 | **DATE** | 2/4/2002 |
| **CASE TITLE** | Grimes vs. Navigant Consulting, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion to dismiss (25-1) is granted. Accordingly, this action is dismissed. Any pending motion in this case is terminated as moot. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 4 number of notices | **Document Number** |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | FEB 05 2002 date docketed | 31 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 2/4/2002 date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
FEB 0 5 2002

| | |
|---|---|
| CHARLES L. GRIMES, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>NAVIGANT CONSULTING, INC.,<br><br>        Defendant. | No. 00 C 7609 |

**MEMORANDUM OPINION AND ORDER**

Charles Grimes brings this Rule 10b-5 securities fraud class action against Navigant Consulting ("Navigant"), a consulting company in which he owns 1.8 million shares, about half a million of which were purchased in the class period.[1] The gravamen of his complaint is that, in 1999, Navigant defrauded investors by failing to disclose that it had used an improper accounting method that inflated the value of its stock. Grimes sued in the District of Delaware on behalf of himself and the class of all persons who purchased Navigant stock between May 6, 1999, and January 24, 2000.[2] Navigant moved to transfer venue to this court, and Grimes

---

[1] The certification to his complaint shows that his first purchases were on November 26, 1999 and the last on January 24, 2000.

[2] Numerous class actions were consolidated before Judge Castillo, *In re: Navigant Consulting Securities Litigation,* No. 99 C 7617, and a class was certified consisting of all persons who purchased or sold Navigant shares between January 1, 1999 and November 19, 1999. That action has been settled and a final

concurred. Navigant moves to dismiss, and I grant the motion.

I.

According to Grimes' complaint, which I accept as true for the purposes of this motion, Navigant acquired four companies in the first quarter of 1999, which transaction it accounted for by using a "pooling of interests" method of accounting (the "pooling method"). This method is intended for use in a situation where shareholders in two separate corporations that merge or otherwise combine become shareholders in the surviving firm. Certain conditions must be satisfied for the use of the pooling method to be proper, including that there be no "planned" transactions when one company acquires another, such as the subsequent reacquisition of the stock issued to effect the transaction. The SEC, in its Staff Accounting Bulletin No. 96 of March 19, 1996, established a presumption that stock issued within six months of the original transaction is part of the plan of acquisition. Several executives of Navigant were involved in such transactions in July and August 1999, including vice president of corporate development Stephen J. Denari, general counsel and secretary Charles Demirjian, and chairman and CEO Robert Maher. For example, on July 2, 1999, Denari used a note to purchase almost $10 million of Navigant stock from

---

judgment entered, dismissing the class claims against Navigant. Judge Castillo declined Mr. Grimes' request that the class be extended to include persons such as himself who purchased Navigant stock after November 19, 1999. Thus if any class were appropriate in this case it would have to be limited to persons who purchased after November 19.

a shareholder of one of the entities Navigant had acquired; in August, that note was repaid with a $10 million loan that Maher took out from Navigant, representing this falsely as a loan to acquire real estate. Maher himself paid back the loan by surrendering about a half million Navigant shares to the company.

Meanwhile, Navigant had been touting its "record results" for the first quarter of 1999 in press releases and 10Q filings with the SEC, and was rated highly by analysts, Grimes says, in part because of its use of the pooling method. In August 1999, after the transactions that made the pooling method inappropriate, Navigant made similar statements about its second quarter performance to the press and the SEC. Its stock quintupled in value from about $11 a share at the time of the IPO to a high of $54 a share.

But in October, the Center for Financial Research and Analysis and *Barrons* (October 25, 1999) published articles raising questions about Navigant's accounting methods. Navigant stock dropped from about $40 a share on October 20 to about $24 a share on October 26. On November 3, 1999, Navigant announced "record" results for the third quarter, and made similar statements in its 10Q filing of November 16. On November 22, 1999, Navigant reported that Maher had "resigned under pressure," and that Denari and Demirjian had been fired after the Directors found that they had engaged in inappropriate transactions. Although Navigant continued to deny that there was any problem with its use of the pooling method, it

announced that outside auditors were reviewing its propriety. In its motion to dismiss, Navigant asks me to consider the fact that the press release of November 22, 1999, stated that:[3]

---

[3] The language of the November 22 press release and third quarter 1999 10Q form is quoted from Navigant's motion to dismiss. Grimes referred to the November 22 press release in his complaint and also quoted the language of the release in his response to the motion to dismiss. I treat the fact that the press release contained this language as a "judicial admission," a "formal concession[] in the pleadings, or stipulations by a party or its counsel, that [is] binding upon the party making [it]. [It] may not be controverted at trial or on appeal. Indeed, [it is] 'not evidence at all but rather ha[s] the effect of withdrawing a fact from contention.'" *Keller v. United States,* 58 F.3d 1194, 1199 (7th Cir. 1995) (citation omitted).

The statement here is made (or quoted) in a brief, but the Seventh Circuit, *Medcom Holding Co. v. Baxter Travenol Labs, Inc.,* 106 F.3d 1388, 1404 (7th Cir. 1997), has cited with approval the holding of another judge of this court that "[j]udicial admissions . . . , are not limited to statements made in the particular motion or application pending. Any 'deliberate, clear and unequivocal' statement, either written or oral, made in the course of judicial proceedings qualifies as a judicial admission." *In re Lefkas General Partners No. 1017,* 153 B.R. 804, 807 (N.D. Ill. 1993) (Zagel, J.). The Seventh Circuit has also treated a statement in a brief as a judicial admission for summary judgment purposes. *See United States v. One Heckler-Koch Rifle,* 629 F.2d 1250, 1253 (7th Cir. 1980) (holding that a representation in a brief, although "neither in a pleading nor an affidavit," nonetheless "may be treated as a[ judicial] admission"); 10A Wright & Miller, *Fed. Prac. & Proc.* § 2723 at 390-91 (1998) ("Admissions in the brief of the party opposing the motion may be used in determining that there is no genuine issue as to any material fact, since they are functionally equivalent to 'admissions on file.'"). *Accord Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.,* 165 F.3d 221, 235 (3rd Cir. 1998).

The Ninth and Tenth Circuits have also held that statements made in a brief may be considered judicial admissions at the discretion of the district court. *See American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226-27 (9th Cir. 1988); *Cadelli v. United Transportation Union,* No. 97-55301, 1997 WL 786180, at *1 (9th Cir. Dec. 15, 1997); *Plastic Container Corp. v. Continental*

> [i]f any of the business combinations were to be recharacterized as purchases rather than poolings of interests, such change would not have any material impact on the company's cash flows or 'cash earnings' during or after fiscal 1999. The effect on the company's reported net income in prior quarters would depend upon the significance of the affected transactions.

On November 23, Navigant stock dropped by half, to $13.50 a share on the NYSE.

Mr. Grimes began purchasing Navigant shares on November 26, 1999. He states that he relied upon Navigant's statements that (1) the pooling method had been properly used as well as that (2) any change in accounting methods would not affect cash earnings in fiscal 1999 or after. In a press release of January 24, 2000, the Directors announced that they had instructed management to restate financial statements to account for the acquisitions as purchases rather than poolings.

On Monday, January 24, Navigant's stock closed, at 11.3125, up from its close on Friday, January 20, 2000, at 9.9375, trading at three times the volume as well. It continued to trade at over 11.3 through at least January 26, 2000. In addition, in his own certification statement, Grimes says that on January 24, 2000, he bought 113,500 shares of Navigant at 10.39, up from the 9.211 per

---

*Plastics of Oklahoma, Inc.*, 607 F.2d 885, 906 (10th Cir. 1979).

share he paid on December 14, 1999, and indeed up from anything he had paid for Navigant stock over the previous 45 days.[4]

II.

On a motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), I accept all well-pleaded factual allegations in the complaint as true and draw all inferences in favor of the plaintiff. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). Dismissal is only appropriate where it appears beyond doubt that the plaintiff can prove no set of facts to support his claim. *Id.* at 846. To show a violation of Rule 10b-5 of the Securities Exchange Act, 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5, the plaintiff must demonstrate that: "(1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement proximately caused the plaintiff's damages." *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997).

A.

Navigant argues that Grimes has failed to comply with the heightened pleading requirements of the Private Securities

---

[4] I take judicial notice of the facts about Navigant's stock prices in January 2000. The legal basis of this is explained in the discussion below. Alternatively, I treat Grimes' certification statement as a judicial admission, as explained in note 3 above.

Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78j(b), 78u-4(b)(2); 17 C.F.R. § 240.10b-5, that a plaintiff must plead scienter by alleging facts giving rise to strong inference of recklessness. The complaint "shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); in addition, to allege scienter sufficiently, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." § 78u-4(b)(2).

In his complaint, Grimes claims that Navigant:

(1) materially misrepresented its financial condition by making false and misleading financial statements;

(2) failed to disclose in a timely way the fact that it had made loans to Maher and other members of the old management team, and the circumstances surrounding those loans, and that Maher had repaid his loan with stock rather than cash;

(3) failed to disclose that throughout 1999 it had improperly utilized the "pooling method" of accounting in connection with certain acquisitions that it had made in the first quarter of that year.

Navigant contends, first, that Grimes pleaded no facts showing that Navigant's new management team was cognizant that the pooling method was inappropriate, and therefore had motive or opportunity. However, Navigant, not the new management team, is the defendant. Navigant also says that it would have been irrational to have made

the disclosures about the shady deals that are part of the evidence for fraud. However, *Barron's* blowing the whistle on Navigant's dubious accounting practices in October 1999 reasonably explains the content and timing of the November 22 press release. Next, Navigant argues that Grimes has not pleaded facts showing that Navigant's prior period financial statements were knowingly false when issued. But, according to the complaint, Maher's management team engaged in a series of doubtful stock acquisitions paid for by shady loans announced under false pretenses, and repaid with remissions of Navigant's own stock, all within the time period that ruled out the use of the pooling method. The misconduct apparently was bad enough that Maher's management team had to be fired, and that could create an inference of knowledge. Finally, Navigant argues that the facts as pleaded do not show that it improperly accounted for the transactions at issue during the first two quarters of 1999, because the events that made that method inappropriate occurred only later, in the third quarter of 1999. However, the supposed subsequent wrongful transactions could give rise to an inference that they were part of the plan of acquisition, and if they were, then the earlier transactions would not be innocent in view of the later ones. Moreover, this argument does not rebut Grimes' charge that Navigant committed securities fraud in the third quarter.

With regard to (3), Grimes' allegations about the improper use of the pooling method, the pleading requirements are satisfied. This is not the case, however, with (1). It is not clear from the complaint precisely what the false statements or suppressions were, apart from those connected with the improper accounting method, or just how Navigant materially misrepresented its financial position beyond saying that it could use the pooling method and was doing well. I conclude that (1) says no more than (3), and there is no additional factual basis alleged under or on the basis of which Grimes could sue for anything additional.

Grimes may not sue on any matter relating to (2), the lies and coverups that he alleges were involved with the loan to Maher. Grimes' own class certification statement reveals that his purchases of Navigant stock in the class period began on November 26, 1999, and he states in his complaint that Navigant had disclosed the facts about the questionable loans no later than November 22, 1999. Once the relevant information has been disclosed, there is no fraud, and, as a matter of law Grimes may not sue on frauds alleged to to have been disclosed days before he bought the stock, and after the market had absorbed the information, here, by cutting the value of the stocks by about half before Grimes bought them. The loss in value of Grimes' Navigant

shares between November 26, 1999, and January 24, 2000[5] cannot be attributed to misconduct that was already disclosed and which the market had already taken into account. All that remains are the misrepresentations Grimes alleges around the pooling method.

B.

The central issue is the materiality of those misrepresentations. Whether a statement is material "depends on how it affects an investor's perception of the security. If the court determines that there is a substantial likelihood that disclosure of the information would have been viewed by the reasonable investor to have significantly altered the total mix of information, the statement is material." *Searls v. Glasser*, 64 F.3d 1061, 1065-1066 (7th Cir. 1995) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)). The issue is whether there is a "substantial likelihood that a reasonable shareholder would consider (them) important . . . ." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). Materiality is normally a "contextual, fact-specific . . . inquiry." *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1333 (7th Cir. 1995), and so materiality "is typically an issue to be resolved by the finder of fact." *Id.* (citing *TSC Indus.*, 426 U.S. at 450).

---

[5] On January 24, 2000, Navigant shares were trading at .86 less than when he first bought his first block relevant here on November 26, 1999. Even excluding the shares he bought at less than the January 24 value, there is a nontrivial difference in the value of many of his shares.

Navigant argues that the purported misrepresentations charged here are immaterial as a matter of law because they did not affect the price of Navigant shares when they were fully disclosed on January 24, 2000. Navigant refers me to Third Circuit law, under which a disclosure that does not move the market is not material as a matter of law.[6] I conclude that this argument is correct.

The theory underlying this rule implicates the efficient market hypothesis, according to which, in a properly operating market, "information important to reasonable investors . . . is immediately incorporated into the stock price." *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000):

> As a result, when a stock is traded in an efficient market, the materiality of disclosed information may be measured post hoc by looking to the movement, in the period immediately following disclosure, of the price of the firm's stock. . . . If a company's disclosure of information has no effect on stock prices, "it follows that the information disclosed . . . was immaterial as a matter of law.

*Id.* Navigant argues that the misinformation about its financial situation and its improper use of the pooling method must have been immaterial, because its stock rose rather than fell after January

---

[6] In a transferred case, I apply the law of the transferor forum (here the Third Circuit) if it differs from the law of the transferee forum (the Seventh Circuit). *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1127 (7th Cir. 1993) (Forum shopping is to be discouraged in transfer cases). I cannot find any case law indicating that the Seventh Circuit has adopted the "move the market" rule, although I expect that it would if the issue were presented, but if it has done so, then that is the applicable law; and if it has not done, then the law of the two fora differ, and I apply Third Circuit law.

-11-

24, 2000, when it issued the press release stating that its financial statements would be changed to reflect the acquisitions as purchases. It asks me to take judicial notice of the stock prices, which it offers in an appendix, and is derived from Yahoo!Finance (Historical Quotes). See http://chart.yahoo.com/d (accessed Sept. 25, 2001) (entered date range and ticker symbol).

I may take judicial notice of an "adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (citing Fed. R. Evid. 201(b)); *see also Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995) ("In order for a fact to be judicially noticed, indisputability is a prerequisite."). Although great caution is called for in deciding to take judicial notice, published stock quotes fall into the second category, as indisputable facts derived from sources the accuracy of which cannot reasonably be questioned. The Second Circuit has held that "the district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 n.8 (2d Cir. 2000). Citing Wright and Miller, the Seventh Circuit has stated that I may take judicial

-12-

notice of the following without converting a motion to dismiss to a summary judgment notion: "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" *General Elec. Capital Corp.*, 128 F.3d at 1080 to 128 F.3d 1074, 1081 (7th Cir. 1997) (citing 5A Wright & Miller, *Fed. Prac. & Proc.* § 1357, at 299 (2d ed. 1990)).

The list of historical stock quotations is not a matter of public record, but it is an item appearing in the record of the case, here in Navigant's Appendix. Moreover, the Seventh Circuit has cited with approval a Second Circuit case stating that "[i]n determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to the facts stated on the face of the complaint . . . and to matters of which judicial notice may be taken." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) citing *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)). Like several other courts in this District, therefore, I conclude that published stock prices are among those matters, at least if they are in the record before me. *See FMC Corp. v. Boesky*, 727 F. Supp. 1182, 1196 n.17 (N.D. Ill. 1989) (Williams, J.) ("[I] may take judicial notice of stock prices pursuant to Federal Rule of Evidence 201(f) when ruling on this [rule 12(b)(6)] motion."); *see also LaSalle v. Medco Research, Inc.*, No. 93 C 5381, 1994 WL 535106, at *10 (N.D. Ill. Sept. 30, 1994), *rev'd on other grounds by* 54 F.3d 443 (7th Cir. 1995); *In re*

*Healthcare Compare Corp. Sec. Litig.*, No. 93 C 1970, 1993 WL 616683, at *13 (N.D. Ill. Nov. 19, 1993) (Bobrick, M.J.).[7] Alternatively, in Grimes' certification statement, attached to his complaint, he lists the prices he paid for the stock at issue in the period in question. As explained in note 3 above, this is a judicial admission.

Either way I take into account the stock prices before and after Navigant's announcement of January 24, 2000, they did not fall but rose when Navigant disclosed its accounting errors. Under the Third Circuit "move the market" rule, that means that any misrepresentations or omissions pertaining to the improper use of the pooling method were immaterial as a matter of law. Thus, even if the disclosures in November, 1999 were imperfect, the failure to disclose was immaterial as a matter of law.

---

[7] In other contexts, the Seventh Circuit has approved taking judicial notice of reliable information published on the internet. *See Austin v. American Ass'n of Neurological Surgeons*, 253 967, 971 (7th Cir. 2001) ("[T]here is an abundance of up-to-date relevant [medical] literature easily retrievable from the World Wide Web . . . . [referring to various websites].") (motion to dismiss context); *Weaver v. Hollywood Casino-Aurora, Inc.*, 255 F.3d 379, 384 (7th Cir. 2001) ("While the record is silent on this [jurisdictional factual] question, outside sources indicate . . . [citing website].").

III.

Navigant's motion to dismiss is granted.

ENTER ORDER:

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: February 4, 2002